Christopher C. McGrath, S.
A final accounting decree in this estate was entered on July 14,1952 and the balance remaining in the hands of the Public Administrator was directed to be paid to three named distributees of the decedent (whose whereabouts were unknown) “ as and for their distributive shares, * * * by depositing the said sums with the City Treasurer of the City of New York to hold for the use and benefit of said distributees.” The city treasurer was directed to deposit these funds “ in a savings bank in the County of Bronx to the credit of these distributees, and subject to the further order of this court.”
*490 The commissioner of hospitals of the City of New York on November 18, 1955 ascertained that this decedent died leaving an estate which was administered in Bronx County and he now seeks, as a creditor, reimbursement of a claim for hospital services rendered to this decedent between November 20, 1946 and December 21, 1946, out of the distributive shares so ...¿■.deposited with the city treasurer.
The decedent died on March 22, 1948 and letters of adminisIratibh were issued to the Public Administrator on March 21, 71949.V: The Public Administrator had no knowledge of this .claim until November, 1955.
Specifically, the commissioner of hospitals seeks an order directing the Public Administrator to proceed under subdivision (17) of section 136-z of the Surrogate’s Court Act, and make application to the city treasurer for the withdrawal of the funds in the amount of the city’s claim.
It is :the position of the corporation counsel that this court has the power to vacate the accounting decree, restore the matter to the calendar, take proof and allow the claim, which is to be paid out of the deposited distributive shares. The Attorney-General opposes this view and maintains that the proceeding must be dismissed.
In the Matter of Fredericks (130 N. Y. S. 2d 54) the Surrogate’s Court, Westchester County held that the commissioner of hospitals could petition the court to vacate an accounting decree where the deposit was made in the office of the Comptroller of the State for the benefit of unknown distributees, pursuant to section 272 of the Surrogate’s Court Act. The court subsequently allowed the claim up to the amount on deposit (Matter of Fredericks, N. Y. L. J., Dec. 30, 1957, p. 8, col. 8; see, also, Matter of Intini, 130 N. Y. S. 2d 56).
The distributive shares paid into court for known distributees whose whereabouts are unknown, pursuant to section 273 of the 'Surrogate’s Court Act can be withdrawn by the persons entitled thereto under rule 32 of the Rules of Civil Practice or under ./certain circumstances by the Public Administrator under subdivision (17) of section 136-z of the Surrogate’s Court Act. But authority in this type of case is limited to payments to or behalf of the persons for whose benefit the deposit was made. ./> A deposit for the benefit of a known next of kin or legatee, .whose whereabouts at the time of the decree were unknown may be sought to be withdrawn in a subsequent proceeding upon a proper petition setting forth the new circumstances showing identity, existence and residence of such distributee or legatee.” (Matter of Alexandroff, 46 N. Y. S. 2d 928, 930.)
*491 The Public Administrator having made the deposit pursuant to the decree has no assets remaining in his hands and has the protection of section 208 of the Surrogate’s Court Act (cf. Matter of Adler, N. Y. L. J., July 23, 1953, p. 132, col. 4). Payment to the city treasurer is equivalent to payment to the distributees themselves. The remedy should be an action under section 170 of the Decedent Estate Law by the creditor against the distributees in a proper court and not a proceeding to vacate the accounting decree.
Even if the court were constrained to follow the reasoning of Matter of Fredericks (supra) this application would have to be denied as the Statute of Limitations is a complete bar, an element which was not present in the Fredericks case.
Under section 104 of the Social Welfare Law, the care received by the decedent constituted an implied contract and this contract is governed by the six-year (Civ. Prac. Act, § 48) Statute of Limitations. The 10-year period referred to in section 104 of the Social Welfare Law refers only to the amount of the recovery. The only question then is when does this Statute of Limita-' tions start to run. The city says from the date they “ discovered ” the estate in 1955 and cite MacLean v. Edenbaum (6 Misc 2d 933) in support of this position. A reading of this case, however, does not disclose sufficient facts. Apparently this was an action against the distributees of the estate of a near relative of one who had received assistance. The court did say (p. 934) that: 1 ‘ The plaintiff had 10 years within which to discover the ability to pay and the six-year statute did not begin to run until the time of such discovery.” This is a correct statement of the. law where the action is against a person as distinguished from an estate.
Section 104 of the Social Welfare Law makes provision for two separate and distinct situations. The first envisions an £ £ action against a person discovered to have real or personal property # * * if such person, or any one for whose support he is or was liable, received assistance and care during the preceding ten years ’ ’. The Statute of Limitations starts to. run from the date of discovery. The second situation, presented here, is an ££ action * * * against the estate * * * of a person who dies leaving real or personal property, if such person, or any one for whose support he is or was liable, received assistance and care during the preceding ten years ”, i.e., from the date of death (cf. Administrative Code of the City of New York, § 603-9.0). The Statute of Limitations then starts to run on the date of death of the decedent.
In view of the foregoing, this proceeding is dismissed.
Settle order.